## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **Case No. 1:21-cr-595-TJK** |
| **v.** | |
| **JAMES DAVIS,** | |
| **Defendant.** | |

### GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNT ONE OF THE SUPERSEDING INDICTMENT

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits its Response in Opposition to Defendant James Davis's Motion to Dismiss Count One (ECF No. 39). The Court should deny defendant's motion to dismiss because Count One of the Indictment sufficiently alleges a violation of 18 U.S.C. § 231(a)(3), and Count One is neither unconstitutionally vague or overbroad nor violative of the First Amendment.

### FACTUAL AND PROCEDURAL BACKGROUND

Based on Davis's actions, the grand jury returned a six-count Superseding Indictment on January 26, 2022, charging him with: Count One, Civil Disorder, in violation of 18 U.S.C. § 231(a)(3); Count Two, Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1); Count Three, Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2); Count Four, Engaging in Physical Violence in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(4); Count Five, Disorderly Conduct in a Capitol Building or Grounds, in violation of 40 U.S.C. § 5104(e)(2)(D); and Count Six, Act of Physical Violence in the Capitol Grounds or Buildings, in violation of 40 U.S.C. § Section 5104(e)(2)(F). ECF No. 20.

Davis was arraigned on the Superseding Indictment on September 27, 2022.  On April 12, 2023, Davis filed a Motion to Dismiss Count One of the of the Superseding Indictment.  ECF No. 39.  A trial is scheduled to commence on June 20, 2023.[1]

On January 6, 2021, James Davis, a resident of King George, Virginia, traveled from his home to Washington, D.C.  Davis was wearing a black and red U.S. Marine Corps baseball cap, sunglasses, a black sweatshirt with a skull and cross bones on the left chest, a black and green Gator around his neck, black gloves, and a CamelBak-style backpack.  On that day, Davis gave an interview conducted by "Williston Trending Topics News Radio Live," and uploaded to Facebook, in which he identified himself as a Virginia Proud Boy:



Davis was also observed on open-source, Body Worn Camera (BWC) and closed-circuit video (CCTV) wielding a large pole / stick:

---

[1] The factual summary in the subsequent paragraphs is included for context and does not represent a full representation or proffer of the evidence to be presented at trial.  The relevant facts at issue are included in the Superseding Indictment.  Since November 2021, Davis, through his attorney, has been provided both individualized and "global" discovery in this case, showing Davis's alleged conduct surrounding the events at the Capitol on January 6, 2021.



Davis was later observed holding the stick/pole in the air and running on the west lawn towards the United States Capitol:



At approximately 2:30 p.m., the police line holding rioters on the West Front of the Capitol grounds collapsed.  Davis was observed on the front line of the rioters as officers began retreating, including some who retreated towards a temporary stairwell leading to the Inauguration Stage, in an area circled below:



At 2:35 p.m., Davis was observed in this area pushing forward and carrying his stick/pole. As officers retreated, Davis continued to push forward on the front lines of the rioters, holding his stick/pole with two hands, as seen on the BWC of Metropolitan Police Department (MPD) Officer A.S.:



Davis pushed forward and confronted MPD Officers I.D. and J.R.  As Officer I.D. shouted at Davis to back up, Davis refused Officer I.D.'s commands and continued to push forward:



Davis shouted at Officer I.D., "I fought for this country! What the fuck are you doing?"  Davis then pushed up against Officer I.D., and Officer I.D. attempted to push Davis back with his baton:



Davis then approached and confronted Officer M.T. as Officer M.T. attempted to stop Davis's advance.  Davis pushed up against Officer M.T.:







During this confrontation, Davis stated, "I'm injured," and fell to the ground as other rioters appeared to assist him.

Davis was also a member of a telegram group chat called "PB Vets," where he went by the username "JD INVINCIBLE." In the days before January 6, Davis posted messages in the chat about his plans to travel to Washington, D.C. On December 28, 2020, Davis wrote, "I hate to tell Communist BLM Mayor Muriel Bowser that she and her barricades and limited metro is not going to stop the Million PATRIOTS descending on DC Jan 5th and 6th to FIGHT FOR AMERICA and OUR FREEDOM!" On January 5, 2021, Davis posted to the chat, "Ther'll (sic) be time enough for countin, when the Dealings Done! LET THE BODIES HIT THE FLOOR! LET THE BODIES HIT THE FLOOR! LET THE BODIES HIT THE FLOOOOOORRRRR! PROUD BOYS HELICOPTER SERVICE! UHURU! !"

Following his participation in the January 6, 2021 riot, Davis sent the chat group a detailed message about his involvement in the riot. On January 6, 2021, at 7:14 p.m., Davis sent the following message to the "PB Vets" group chat:

> JD INVINCIBLE is FUCKING INVINCIBLE! I did hit a few cops on the head with the BIG STICK, but unfortunately lost that beautiful weapon. We pushed forward and pushed the Capitol Police up their Emergency Staircase. I was moving forward up the stairs when someone fell and like dominoes, I ended up falling on the concrete, hitting my head which knocked me out. When I woke up much later, I thought it was Capitol Police. But it was actually a group of Patriots, and a Combat Medic who were picking me up and Fireman carried me out of the Capitol to an open park, past the tear gas to lean on a tree and recover. As they carried me out I shouted with all I had left, I AM A VIRGINIA PROUD BOY; MARINE COMBAT VETERAN, I TOOK THE CAPITOL, DONT GIVE UP THE HILL! I kept shouting this as they fireman carried me through the enormous crowd. And as I recovered leaning on that tree, I continued to share that message with everyone who passed by. And once I was better a half hour later or more; I saw a FAFO cover and linked up with a Massachusetts PB group of 2 BROTHERS! And was able to not only make it from the Capitol to Farragut West Metro but help an older woman who had an asthma attack. I got her into a hotel and slowed her breathing. The sad fact of her case, she tried to get 2 police at different locations to get help, and they just told her to keep moving and did Not call 9-11! Everyone should be outraged by all of this, especially denying a TRUMP SUPPORTER medical care. What I do finally

remember about the Assault on the Capitol, I was on the front of the line, I kept pointing to my MARINE CORPS cover and patch saying I FUCKING FOUGHT IN IRAQ FOR AMERICA and FREEDOM; WHAT THE FUCK ARE YOU DOING? LET US IN OUR CAPITOL! THIS IS OUR HOUSE! They apologized and said we wish we could. We REPLIED CHARGE! PUSH FORWARD! WHOSE HOUSE? OUR HOUSE! I also remember at that time getting Pepper Sprayed, wiping it off and pointing to my Marine Corps patch; telling the Cop, I FUCKING EAT TEAR GAS FOR BREAKFAST! So he sprayed me again, wiped that off, and started singing the MARINE CORPS HYMN! And I heard him say, FUCKING MARINE GAS CHAMBER, as I used the BEEFY STICK and pushed forward, forcing the Capitol Police in Retreat up their Emergency Stair Case! My only regrets: not personally breaching inside the Capitol, losing my new beat down gloves removed to get my pulse, my favorite Marine Corps Veteran cover, losing the most important part of my collapsable baton, and sadly losing my BEEFY BIG STICK! It was an HONOR to FIGHT the TYRANNY and Represent the NOVA SONS OF LIBERTY!"

## **LEGAL STANDARD**

An indictment is sufficient under the Constitution and Rule 7 of the Federal Rules of Criminal Procedure if it "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend," *Hamling v. United States*, 418 U.S. 87, 117 (1974), which may be accomplished, as it is here, by "echo[ing] the operative statutory text while also specifying the time and place of the offense." *United States v. Williamson*, 903 F.3d 124, 130 (D.C. Cir. 2018). "[T]he validity of an indictment 'is not a question of whether it could have been more definite and certain.'" *United States v. Verrusio*, 762 F.3d 1, 13 (D.C. Cir. 2014) (quoting *United States v. Debrow*, 346 U.S. 374, 378 (1953)). An indictment need not inform a defendant "as to every means by which the prosecution hopes to prove that the crime was committed." *United States v. Haldeman*, 559 F.2d 31, 124 (D.C. Cir. 1976).

Rule 12 permits a party to raise in a pretrial motion "any defense, objection, or request that the court can determine *without a trial on the merits*." Fed. R. Crim. P. 12(b)(1) (emphasis added). It follows that Rule 12 "does not explicitly authorize the pretrial dismissal of an indictment on sufficiency-of-the-evidence grounds" unless the Government "has made a *full* proffer of evidence"

or the parties have agreed to a "stipulated record," *United States v. Yakou*, 428 F.3d 241, 246-47 (D.C. Cir. 2005) (emphasis added)—neither of which has occurred here.

Indeed, "[i]f contested facts surrounding the commission of the offense would be of *any* assistance in determining the validity of the motion, Rule 12 doesn't authorize its disposition before trial." *United States v. Pope*, 613 F.3d 1255, 1259 (10th Cir. 2010) (Gorsuch, J.).  Criminal cases have no mechanism equivalent to the civil rule for summary judgment.  *See e.g.*, *United States v. Bailey*, 444 U.S. 394, 413, n.9 (1980) ("[M]otions for summary judgment are creatures of civil, not criminal trials"); *Yakou*, 428 F.3d at 246-47 ("There is no federal criminal procedural mechanism that resembles a motion for summary judgment in the civil context"); *United States v. Oseguera Gonzalez*, No. 20-CR-40 (BAH), 2020 WL 6342948 at *5 (D.D.C. Oct. 29, 2020) (collecting cases explaining that there is no summary judgment procedure in criminal cases or one that permits pretrial determination of the sufficiency of the evidence).  Accordingly, dismissal of a charge does not depend on forecasts of what the Government can prove.  Instead, a criminal defendant may move for dismissal based on a defect in the indictment, such as a failure to state an offense. *See United States v. Knowles*, 197 F. Supp. 3d 143, 148 (D.D.C. 2016).  Whether an indictment fails to state an offense because an essential element is absent calls for a legal determination.

Thus, when ruling on a motion to dismiss for failure to state an offense, a district court is limited to reviewing the face of the indictment and more specifically, the language used to charge the crimes.  *See e.g.*, *United States v. Bingert*, 605 F. Supp. 3d 111, 118 (D.D.C. 2022) (a motion to dismiss challenges the adequacy of an indictment on its face and the relevant inquiry is whether its allegations permit a jury to find that the crimes charged were committed); *United States v. McHugh*, 583 F. Supp. 3d 1, 26-28 (D.D.C. 2022) (a motion to dismiss involves the Court's

determination of the legal sufficiency of the indictment, not the sufficiency of the evidence); *United States v. Puma*, 596 F.Supp.3d 90, 96 (D.D.C. 2022) ("In ruling on a motion to dismiss for failure to state an offense, a district court is limited to reviewing the <u>face</u> of the indictment and, more specifically, the <u>language used</u> to charge the crimes") (quoting *United States v. Sunia*, 643 F.Supp. 2d 51, 60 (D.D.C. 2009)).

## ARGUMENT

### I.      18 U.S.C. § 231(a)(3) is Not Unconstitutionally Vague.

Section 231(a)(3) provides fair notice to Davis of the conduct it punishes and is therefore not unconstitutionally vague.  Numerous judges in this district, including this Court, have rejected similar challenges to Section 231(a)(3). *See e.g.*, *United States v. Nordean*, 579 F. Supp. 3d 28, 57-58 (D.D.C. 2021); *United States v. Bingert*, 605 F. Supp. 3d 111, 128-130 (D.D.C. 2022); *McHugh*, 583 F. Supp. 3d at 26-28; *United States v. Fischer*, No. 21-CR-234 (CJN), 2022 WL 782413, at *2-3 (D.D.C. Mar. 15, 2022), *rev'd on other grounds*, 64 F.4th 329 (D.C. Cir. 2023) (overturning dismissal of obstruction of justice count); *United States v. Williams*, No. 21-CR-618 (ABJ), 2022 WL 2237301, at *4-5 (D.D.C. June 22, 2022); *United States v. GossJankowski*, No. 21-CR-123 (PLF), 2023 WL 130817 at *11-12 (D.D.C. Jan. 9, 2023).[2]

Count One charges Davis with obstructing, impeding and interfering with law enforcement during a civil disorder, in violation of 18 U.S.C. § 231(a)(3).  Count One states:

> On or about January 6, 2021, within the District of Columbia, JAMES RUSSELL DAVIS, committed and attempted to commit an act to obstruct, impede, and interfere with a law enforcement officer, that is, officers from the United States Capitol Police Department and the Metropolitan Police Department, lawfully engaged in the lawful performance of his/her official duties, incident to and during

---

[2] Several courts outside this circuit have also rejected similar challenges to Section 231(a)(3). *See e.g.*, *United States v. Phomma*, 561 F. Supp. 3d 1059, 1069-70 (D. Or. 2021); *United States v. Rupert*, No. 20-CR-104 (NEV/TNL), 2021 WL 1341632, at *16-20 (D. Minn. Jan. 6, 2021); *United States v. Wood*, No. 20-CR-56 (MN), 2021 WL 3048448 (D. Del. July 20, 2021); and *United States v. Howard*, No. 21-CR-28 (PP), 2021 WL 3856290 (E.D. Wis. Aug. 30, 2021).

the commission of a civil disorder, which in any way and degree obstructed, delayed, and adversely affected commerce and the movement of any article and commodity in commerce and the conduct and performance of any federally protected function.

(Civil Disorder, in violation of Title 18, United States Code, Sections 231(a)(3))

(ECF No. 20 at 1-2.)

The "void for vagueness" doctrine prevents the enforcement of a criminal statute that is "so vague that it fails to give ordinary people fair notice of the conduct it punishes" or is "so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015). To ensure fair notice, "generally, a legislature need do nothing more than enact and publish the law, and afford the citizenry a reasonably opportunity to familiarize itself with its terms and to comply." *United States v. Bronstein*, 849 F.3d 1101, 1107 (D.C. Cir. 2017) (citation omitted).

A statute is not unconstitutionally vague simply because its applicability is unclear at the margins, *United States v. Williams*, 553 U.S. 285, 306 (2008), or because reasonable jurists might disagree on where to draw the line between lawful and unlawful conduct in particular circumstances, *Skilling v. United States*, 561 U.S. 358, 403 (2010). A provision is impermissibly vague only if it requires proof of an "incriminating fact" that is so indeterminate as to invite arbitrary and "wholly subjective" application. *Williams*, 553 U.S. at 306; *see Smith v. Goguen*, 415 U.S. 566, 578 (1974). A statutory provision is "not rendered unconstitutionally vague because it 'do[es] not mean the same thing to all people, all the time, everywhere.'" *Bronstein*, 849 F.3d at 1107 (quoting *Roth v. United States*, 354 U.S. 476, 491 (1957)). A statute is instead vague where it fails to specify any "standard of conduct . . . at all." *Coates v. Cincinnati*, 402 U.S. 611, 614 (1971). A law is not vague because it "call[s] for the application of a qualitative standard . . . to real-world conduct; 'the law is full of instances where a man's fate depends on his estimating

11

rightly . . . some matter of degree.'" *Johnson*, 576 U.S. at 603-04 (quoting *Nash v. United States*, 229 U.S. 373, 377 (1913)).

There is a strong presumption that a statute is not vague. *See United States v. Nat'l Dairy Products Corp.*, 372 U.S. 29, 32 (1963). Other courts in this district have recognized that high bar. *See United States v. Gonzalez*, No. 20-CR-40 (BAH), 2020 WL 6342948, at *7 (D.D.C. Oct. 29, 2020); *see also United States v. Harmon*, No. 19-CR-395 (BAH), 2021 WL 1518344, at *4 (D.D.C. Apr. 16, 2021) (finding that the defendant did not meet the "stringent standard" to prevail on a Rule 12 vagueness motion).

Section 231(a)(3) is not unconstitutionally vague. It provides sufficient notice of the conduct it prohibits. The terms with which Davis takes issue – "any act to obstruct, impede, or interfere" and "incident to and during the commission of a civil disorder" – do not carry the potential for misunderstanding or make the statute "so standardless that it invites arbitrary enforcement." *Johnson*, 576 U.S. at 595; *see also Nordean*, 579 F. Supp. 3d at 57 (observing that "there are specific fact-based ways to determine whether a 'defendant's conduct interferes with or impedes others,' or if a law enforcement officer is performing his official duties 'incident to and during' a civil disorder."). Like the challenge denied by Judge Bates, Davis's motion "misunderstand[s]" vagueness: "There is a crucial difference between reasonable people differing over the meaning of a word and reasonable people differing over its application to a given situation – the latter is perfectly normal, while the former is indicative of constitutional difficulty." *McHugh*, 583 F. Supp. 3d at 27.

The statute's terms are thus quite different from statutory terms that courts have found to be vague, such as statutes that turn on subjective judgments of whether a defendant's conduct was "annoying" or "indecent," or those that depend on the victim's state of mind, as in the cases

defendant cites.  *See Nordean*, 579 F. Supp. 3d at 57; *see also Williams*, 553 U.S. 306 (citing *Coates*, 402 U.S. at 614); *United States v. Kozminski*, 487 U.S. 931, 949-50 (1988).  "An ordinary person would have an intuitive understanding of what is proscribed by a ban on obstructing, impeding, or interfering with law enforcement."  *McHugh*, 583 F. Supp. 3d at 27.  In addition, Section 231(a)(3) is not unique; many state and federal statutes likewise criminalize "obstructing" the government's efforts to enforce the law and maintain public order, and they have been upheld. *See, e.g.*, 26 U.S.C. § 7212(a) (prohibiting obstructing or impeding the administration of the tax laws); 18 U.S.C. § 2237 (making it unlawful to "oppose, prevent, impede, intimidate or interfere with" a maritime investigation); *United States v. Brice*, 926 F.2d 925, 930-31 (9th Cir. 1991) (rejecting overbreadth and vagueness challenges to 41 C.F.R. § 101-20.305, regulation prohibiting impeding or disrupting government duties).

Davis also claims that the phrase "incident to and during the commission of a civil disorder" is vague because he cannot tell whether the statute requires an individual to have participated in the civil disorder or if it is sufficient that he be in the general vicinity of the event. ECF No. 39 at 8.  This argument is also meritless.  "The crime set forth by the statute is not mere presence at a civil disorder . . . but an act committed during the course of such a disorder, so 'civil disorder' simply describes the environment in which the act must be committed in order to be subject to prosecution under § 231(a)(3)."  *United States v. Mechanic*, 454 F.2d 849, 853 (8th Cir. 1971); *see also Howard*, 2021 WL 3856290, at *14 ("[T]he statute does not require the government to prove that the defendant created the civil disorder, or that he was participating in the civil disorder.").  Contrary to Davis's argument that any "tumultuous public gathering" could qualify (ECF No. 39 at 8), "it is not just any public disturbance which is the subject of the section, but only public disturbances which (1) involve acts of violence (2) by assemblages of three or more

persons, and which (3) cause immediate danger of or result in injury to (4) the property or person of any other individual." *Mechanic*, 454 F.2d at 853; *see* 18 U.S.C. § 231(1); *cf. United States v. Huff*, 630 F. App'x 471, 489 (6th Cir. 2015) (unpublished) (rejecting vagueness challenge to "civil disorder" term in 18 U.S.C. § 231(a)(2) and citing definition in 18 U.S.C. § 231(1)). *See also McHugh*, 583 F. Supp. 3d at 26, n.22; *Williams*, 2022 WL 2237301 at 5.

And even if a broad range of public gatherings could be deemed "civil disorders," Section 231(a)(3) criminalizes only particular conduct, not mere participation in such a disorder. The "civil disorder" language operates to <u>narrow</u> the situation where the statute may apply – unlike other statutes, which criminalize acts of obstruction, wherever they may take place. *See* 26 U.S.C. § 7212(a) (criminalizing obstruction of tax laws). The requirement that the *actus reus* take place in the context of a civil disorder does not make Section 231 vague; to the contrary, it limits its application.

Davis's vagueness claim also fails because his conduct clearly falls within the ambit of Section 231. The Court must consider vagueness "as applied to the particular facts at issue, for a [defendant] who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applies to the conduct of others." *Nordean*, 579 F. Supp. 3d at 57 (citing *Holder v. Humanitarian Law Project*, 561 U.S. 1, 18-19 (2010) (cleaned up)); *see generally Wood*, 2021 WL 3048448, at *9 ("Defendant does not have standing to bring a facial vagueness challenge" to Section 231(a)(3) because he failed to "demonstrate that [the statute] is vague as applied to his conduct"). The January 6 attack on the United States Capitol was clearly a "civil disorder," not just some "tumultuous public gathering" to which the police were called. And there is no question that Davis participated in the disorder through his actions on the West Front of the Capitol at approximately 2:35 p.m. Tracking the statutory language, the Superseding Indictment

alleges that he "commit[ted] an act to obstruct, impede, and interfere with a law enforcement officer." While the Court should reject Davis' vagueness claim based solely on the statute and the indictment, the United States anticipates that its evidence at trial will establish that Davis crossed into the restricted area, entered the West Front of the Capitol grounds, where rioters were clearly battling officers, and did so less than five minutes after the police line on the West Front had been broken by rioters. Davis proceeded on the front lines of rioters pushing forward and made physical contact with multiple law enforcement officers as they were attempting to retreat. Davis wielded a large stick/pole in one hand, physically confronted and intimidated officers, and shouted at them. Among the rioters shown on body worn camera in that moment, Davis immediately stands out as one of the few who was clutching what could objectively be categorized as a weapon. After being forced back by one officer's baton, Davis then physically confronted another officer. Davis was not a bystander; he was an active participant in a civil disorder. The statute is "sufficiently clear that a normally intelligent person could ascertain its meaning and would be given fair notice of whether or not his conduct is forbidden." *Mechanic*, 454 F.2d at 854. Whether viewed as a facial challenge to the statute or a challenge as applied to his individual case, Davis fails to establish that Section 231(a)(3) is unconstitutionally vague.

**II.    18 U.S.C. § 231(a)(3) Does Not Criminalize Protected Speech Under the First Amendment.**

Davis's motion to dismiss should also be denied because Section 231(a)(3) is not overbroad under the First Amendment. Davis argues that Section 231(a)(3) "extends to a substantial amount of constitutionally protected speech and expressive conduct, well in excess of the law's legitimate sweep." ECF No. 39 at 10. Davis does not address the differences between "as applied" and facial

First Amendment challenges.[3]  Regardless, as every other judge in this district who has addressed this claim has held, this claim fails.  A criminal law is facially overbroad only if "'a substantial number' of its applications are unconstitutional, 'judged in relation to the statute's plainly legitimate sweep.'"  *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 n.6 (2008) (quoting *New York v. Ferber*, 458 U.S. 747, 769-71 (1982)); *see also Williams*, 553 U.S. at 293; *Grayned v. City of Rockford*, 408 U.S. 104, 114 (1972).  A facial overbreadth challenge faces a steep climb when the statute focuses mainly on conduct, as § 231(a)(3) assuredly does.  *See Virginia v. Hicks*, 539 U.S. 113, 119 (2003) (noting the "substantial social costs created by the overbreadth doctrine when it blocks application of a law to ... constitutionally unprotected conduct").

Judge Berman Jackson recently rejected overbreadth challenges to § 231(a)(3).  Rejecting an overbreadth challenge in *Williams,* Judge Berman Jackson noted that "[i]n the past year, at least four other courts in this district have considered whether section 231(a)(3) is overbroad on its face, and all have concluded it is not."  *Williams,* 2022 WL 2237301, at *6.[4]  Judge Berman Jackson "agree[d] with the reasoning in those decisions."  *Id.*  "First, the statute plainly covers conduct, not

---

[3] One raising a facial challenge must establish "that no set of circumstances exists under which [the challenged statute] would be valid or that the statute lacks any plainly legitimate sweep." *United States v. Stevens*, 559 U.S. 460, 472 (2010). The person challenging the statute need not show injury to himself. *See Sec'y of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 958 (1984). On the other hand, to prevail on an as-applied First Amendment challenge, the person challenging the statute must show that the regulations are unconstitutional as applied to their particular speech activity. *See Members of City Council of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, 802-03 (1984); *accord, Edwards v. D.C.*, 755 F.3d 996, 1001 (D.C. Cir. 2014).

[4] Citing *McHugh*, 2022 WL 296304, at *17; *Mostofsky*, 2021 WL 6049891, at *8–9; *Nordean*, 2021 WL 6134595, at *17; and *Gossjankowski*, 2022 WL 782413, at *3. Judge Berman Jackson also cited three out of district cases that reached the same result. 2022 WL 2237301, at *6, citing *United States v. Howard*, 21-cr-28 (PP), 2021 WL 3856290, at *11-12 (E.D. Wis. Aug. 30, 2021); *United States v. Phomma*, 561 F. Supp. 3d 1059, 1067-68 (D. Or. 2021); and *United States v. Wood*, 20-cr-56 (MN), 2021 WL 3048448, at *7-8 (D. De l. July 20, 2021).

speech, as it criminalizes 'any *act* to obstruct, impede, or interfere with' a law enforcement officer engaged in the performance of official duties, and the terms 'obstruct, impede, or interfere with' are all plainly understood and must be supported by the facts in any particular case." *Id.* (emphasis added). "Although some 'acts' could also serve an expressive function, and one could come up with a hypothetical scenario in which the alleged interference involved particularly obstreperous speech, the law does not require dismissing a charge merely because there is a possibility that the provision could reach some constitutionally protected activity." *Id.* "Since section 231(a)(3) does not 'make unlawful a substantial amount of constitutionally protected conduct,' it is not overbroad on its face." *Id.* (citing *City of Houston v. Hill*, 482 U.S. 451, 459 (1987)).

Other judges of this district, including this Court, are in accord. *See Nordean*, 579 F. Supp. 3d at 56-58 (§ 231(a)(3) is neither vague nor overbroad); *Mostofsky*, 579 F. Supp. 3d at 22-24 (rejecting overbreadth challenge to § 231(a)(3) and observing that Section 231's "plain text, however, indicates that it is 'targeted primarily if not exclusively at conduct rather than speech"); *McHugh*, 583 F. Supp. 3d at 24-29 (same).

Those decisions are consistent with the applicable overbreadth principles. In the typical case, a litigant bringing a facial constitutional challenge "must establish that no set of circumstances exists under which the [law] would be valid," or the litigant must "show that the law lacks a plainly legitimate sweep." *Americans for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2387 (2021) (quotation omitted). In the First Amendment context, a litigant must demonstrate that "a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Id.* (cleaned up). Refusing to enforce a statute because of overbreadth concerns is "strong medicine," and courts will do so on such grounds "only as a last resort." *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973). "Rarely, if ever, will an overbreadth challenge

succeed against a law or regulation that is not specifically addressed to speech or to conduct necessarily associated with speech," *Virginia v. Hicks*, 539 U.S. at 124.  The requirement that a defendant who violates Section 231(a)(3) act with the intent to obstruct, interfere or impede is critical to the First Amendment analysis.  *See United States v. Gilbert*, 813 F.2d 1523, 1529 (9th Cir. 1987) (intent requirement prevents application of statute to protected speech).

Davis has given this Court no reason to depart from the unanimous holdings of other judges in this district and elsewhere; Section 231(a)(3) is neither vague nor unconstitutionally overbroad.

### III.    Since 18 U.S.C. § 231(a)(3) is Constitutional, Defendant's Separation of Powers Argument is Moot.

Last, defendant Davis argues this Court and other courts cannot interpret Section 231(a)(3) to be constitutional if it is unconstitutional on its face. For the reasons set forth above, the statute is constitutional on its face. Therefore, defendant's "separation of powers" argument is moot.

### IV.    Through the Discovery Process and This Filing, Davis Has Sufficient Notice of the Charges in Order to Understand Them and Prepare a Defense

In the very last sentence of Davis's motion, for the first time with no supporting caselaw or authorities, Davis alternatively requests a bill of particulars.  In the local rules, LCrR 47(a) requires that each motion "shall include or be accompanied by a statement of the specific points of law and authority that support the motion, including where appropriate a concise statement of facts."  Perfunctory and undeveloped arguments are deemed waived. *United States v. Wright*, 233 F.Supp.3d 165, 169 n. 5 (D.D.C. 2017);  *Stollar v. United States*, 216 F.Supp.3d 171, 176 n. 8 (D.D.C. 2016);  *see also, Raines v. U.S. Department of Justice,* 424 F.Supp.2d 60, 66 n. 3 (D.D.C.2006) (noting that it is not the obligation of the court to research and construct legal arguments open to parties, especially when they are represented by counsel).

Even assuming Davis has sufficiently moved for a bill of particulars, his motion should be denied.  An indictment need only include "a plain, concise, and definite written statement of the

essential facts constituting the offense charged," but a court may, in its discretion, "direct the government to file a bill of particulars" clarifying the allegations in the indictment. Fed. R. Crim. P. 7(c)(1), (f).  A bill of particulars "ensure[s] that the charges brought against a defendant are stated with enough precision to allow the defendant to understand the charges, to prepare a defense, and perhaps also to be protected against retrial on the same charges." *United States v. Butler*, 822 F.2d 1191, 1193 (D.C. Cir. 1987).  It is not required, however, if the indictment "is sufficiently specific, or if the requested information is available in some other form." *Id.*; *see United States v. Lorenzana-Cordon*, 130 F. Supp. 3d 172, 179 (D.D.C. 2015) (denying motion for bill of particulars and noting that the government had provided extensive discovery that "allows Defendants to adequately prepare for trial").

A bill of particulars "is not a discovery tool or a devise for allowing the defense to preview the government's theories or evidence." *United States v. Ramirez*, 54 F. Supp. 2d 25, 29 (D.D.C. 1999); see also *United States v. Brodie*, 326 F. Supp. 2d 83, 91 (D.D.C. 2004) (same).  Rather, a bill of particulars "is intended to give the defendant only that minimum amount of information necessary to permit the defendant to conduct his own investigation and not to provide the defendant with the fruit of the government's investigation." *United States v. Sanford Ltd.*, 841 F. Supp. 2d 309, 316 (D.D.C. 2012) (internal quotation marks and citation omitted, emphasis in original). Therefore, a bill of particulars "properly includes clarification of the indictment, not the government's proof of its case." *United States v. Martinez*, 764 F. Supp. 2d 166, 173 (D.D.C. 2011) (internal quotation marks and citation omitted); *United States v. Savoy*, 889 F. Supp. 2d 78, 115 (D.D.C. 2012) (same); see also *United States v. Taylor*, 17 F. Supp. 3d 162, 178 (E.D.N.Y. 2014) (bill of particulars "may not be used by the defense as a fishing expedition or to force the government to reveal all its evidence before trial").

Applying this principle, judges of this Court have consistently denied motions for a bill of particulars where, as here, the motion seeks details about the nature of the government's evidence. Thus, for example, in *United States v. Han*, 280 F. Supp. 3d 144, 149 (D.D.C. 2017), the Court denied a motion for a bill of particulars requesting information about the basis for fraud and tax charges against the defendant, including the precise representations allegedly made by the defendant and the amount of taxes allegedly owed. The Court explained that the requested information had already been provided to the defendant in discovery and elsewhere, and a "bill of particulars is meant to allow a defendant to properly prepare for trial, not provide a method to force the prosecution to connect every dot in its case." Id.

Similarly, in *Brodie*, the Court denied a motion for a bill of particulars requesting "the circumstances surrounding the alleged acts" of fraud committed by the defendants as well as "other evidentiary details." 326 F. Supp. 2d at 92. The Court reasoned that the charges set forth in the indictment were "detailed and alleged with particularity" and "the discovery provided by the government has been voluminous," and therefore there was "no reason for any further particularization of the overt acts." *Id.*

Finally, in *Sanford Ltd.*, the Court denied a motion for a bill of particulars regarding the "substance, time, place and date" of allegations regarding falsification of records and other charges against a corporate defendant. 841 F. Supp. 2d at 315. The Court explained that "the general rule in conspiracy cases is that the defendant is not entitled to obtain detailed information about the conspiracy in a bill of particulars." *Id*. at 317 (internal quotation marks and citation omitted). Accordingly, the Court denied the defendant's request for information about the identities of its employees alleged to have participated in the conspiracy and other details about the overt acts charged in the indictment. *Id.* at 317-18.

The same result is appropriate here for three reasons.  First, the indictment provides sufficient detail outlining the allegations against the Davis.  *See Mejia*, 448 F.3d at 445 (no bill of particulars required where the Superseding Indictment identified, among other things, the object of the charged conspiracy, the conspiracy's "time period," the applicable *mens rea*, and locations where conspirators acted); *see also United States v. Sargent*, No. 21-CR-258 (TFH), 2022 WL 1124817 at *3-7 (D.D.C. Apr. 14, 2022) (finding in January 6 case that a Section 231(a)(3) charge using the same language Davis challenges here was sufficiently specific and fairly informed the defendant of the charges he needed to defend; was not vague; and protected against double jeopardy concerns).  Along with providing a specific date and location for the alleged conduct, the indictment language tracks closely that of the applicable statutes.  Nothing in the indictment's language is vague, unclear, or lacking in specificity, especially in light of the Defendant's recorded conduct.

Second, through discovery previously provided to Davis, and by way of today's filing, Davis is able to (1) prepare his defense; (2) avoid prejudicial surprise at trial; and (3) guard against double jeopardy concerns.  Defendant Motion, ECF No. 104, at 1-2 (Citing *United States v. Hubbard*, 474 F.Supp. 64, 80 (D.D.C. 1979).  The government has named four of the MPD officers Davis interacted with on the West Front at approximately 2:35 p.m.,[5] and Davis's act of physically confronting, pushing up against, and shouting at these officers while wielding a large stick/pole were the acts Davis committed to "obstruct, impede, and interfere" with law enforcement that forms the basis for Count One of the Superseding Indictment.

---

[5] The government will supplement this filing by emailing Defense Counsel and providing the full names of all individuals referenced by their initials.

As the government prepares for trial, it will continue to supplement any reports, videos, or other evidence that it believes to be either relevant or subject to discovery.

## **CONCLUSION**

For the foregoing reasons, the Government respectfully requests that defendant Davis's motion to dismiss Count One be denied.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

BY:        Stephen J. Rancourt
Assistant United States Attorney, Detailee
Texas Bar No, 24079181
601 D Street, N.W.
Washington, D.C. 20530
(806) 472-7398
stephen.rancourt@usdoj.gov